[No. B057483. Second Dist., Div. Two. May 14, 1992.]

GEORGE SEHREMELIS et al., Plaintiffs and Appellants, v.
FARMERS AND MERCHANTS BANK OF LONG BEACH, Defendant
and Respondent.

768

COUNSEL

Keesal, Young & Logan, Samuel A. Keesal, Jr., Michael A. Thurman and Dawn M. Schock for Plaintiffs and Appellants.

Michael Leight for Defendant and Respondent.

OPINION

**FUKUTO, Acting P. J.**—Plaintiffs, George and Athena Sehremelis, appeal from a judgment of dismissal entered following the sustaining without leave to amend of demurrers to their fourth amended complaint as against defendant Farmers and Merchants Bank of Long Beach (FMB). Plaintiffs, borrowers under construction loans, sued FMB on account of its negotiating checks, drawn by the lender upon plaintiffs' loan accounts, which allegedly were deposited with "forged, missing, or otherwise unauthorized endorsements." The trial court ruled that plaintiffs could not state a cause of action against FMB on any of four theories advanced: breach of warranty, conversion, equitable subrogation, and negligence. We conclude that the causes of action for conversion and equitable subrogation were properly dismissed, but that existing law and policy sustain the legal sufficiency of the breach of commercial warranty and negligence causes of action. We therefore reverse the dismissal as to them.

FACTS

This case arises out of the diversion of sums from plaintiffs' construction loans by a general contractor and his associates, who obtained checks from the lending bank and negotiated and deposited them, with allegedly forged or incomplete indorsements, at FMB. Although plaintiffs have asserted numerous causes of action against the contractor and his cohorts, as well as the lender and its project inspector, only claims against FMB are at issue here. Read under the liberal rules of review applicable following demurrer (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 210 [266 Cal.Rptr. 638, 786 P.2d 365]; *Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083]), the relevant allegations of the fourth amended complaint (complaint) are as follows.

Between May 1987 and May 1988, plaintiffs undertook to develop three parcels of property they owned, one in San Bernardino and two in Long Beach, by building two apartment buildings and a small shopping center. By three apparently identical contracts, plaintiffs engaged defendant George O.

Townsend as construction manager, or general contractor.[1] Plaintiffs also obtained three construction loans, one for each project, from Tokai Bank of California (Tokai), in amounts of $1.25 million, $1.7 million, and $2.5 million. The three construction loan agreements provided that the loan funds—together with "equity" advances of more than $800,000 which plaintiffs agreed to make on the first two projects—would be deposited in "loans in process" accounts at Tokai.

Under the agreements, plaintiffs were to submit to Tokai applications for payment of construction expenses, documenting the labor and materials in question, upon which Tokai would make payments from plaintiffs' loans in the "loans in process" accounts, after inspecting the progress of construction. This payment procedure was further refined by disbursement schedules, which provided for payment upon plaintiffs' submission of Tokai vouchers, signed by plaintiffs or their designated representatives and endorsed by the payees, accompanied by lien releases and again followed by inspector verification. The disbursement schedule for the third loan agreement, as annexed to the complaint, included a supplement, apparently executed by plaintiffs, authorizing Townsend or codefendant Friedman to sign payment requests. Plaintiffs allege that Tokai, without their consent, allowed Townsend and Friedman to insert themselves as authorized signatories on that account.

On information and belief, plaintiffs allege that between May and September 1988, Townsend and Friedman caused Tokai to issue "at least" 25 checks, in the combined sum of $742,964.27, each payable to Townsend's Western Development Company and another, "real or fictitious" subcontractor. The checks were issued on invoices that were fraudulent, in that they either overstated the amounts due, referred to work not performed, or described work done on other projects. Townsend and Friedman proceeded to negotiate the checks at FMB, where Townsend maintained accounts and enjoyed personal relationships with FMB personnel. In each case, when the check was negotiated the copayee-subcontractor's indorsement "was either forged, unauthorized or nonexistent." Thereafter, Tokai paid the checks, charged them against plaintiffs' loan accounts, and refused plaintiffs' demand to recredit those amounts.

Additional allegations of the particular causes of action will be stated as we analyze them separately.

---

[1]Other documentation refers to defendant Western Development Company as the contractor; and plaintiffs allege that it and three other entities are alter egos of Townsend and/or defendant Terry Friedman. Hereafter we refer generally to the four codefendant entities, along with Townsend himself, as "Townsend."

DISCUSSION

*1. Breach of Statutory Warranty.*

In their primary cause of action against FMB, the eighth, plaintiffs seek damages for breach of warranties made and extended under section 4207 of the California Uniform Commercial Code. (That code is cited hereafter by section alone.) As here relevant, section 4207 provides that a collecting bank—which FMB here was (§ 4105, subd. (d))—that obtains payment of a check warrants, "to the payor bank or other payor who in good faith pays or accepts the item that [¶] (a) [the collecting bank] has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title . . . ."

■ This warranty of "good title" refers to "the validity of the chain of necessary indorsements" (*Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 684 [148 Cal.Rptr. 329, 582 P.2d 920] (*Sun 'n Sand*)), and more specifically to whether "the instrument presented contain[s] all necessary indorsements and are such indorsements genuine or otherwise deemed effective?" (*Id.* at p. 687.) Section 4207, subdivision (a) thus imposes a strict liability on the collecting bank (see *Cooper* v. *Union Bank* (1973) 9 Cal.3d 371, 381 [107 Cal.Rptr. 1, 507 P.2d 609]), under which that bank, best able to assure the validity of indorsements "since it presumably confronts the indorser," bears ultimate responsibility for forged indorsements (other than the drawer's own). (*Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 821, 830 [149 Cal.Rptr. 883] (*Fireman's*).)

Plaintiffs' allegation that FMB deposited and collected Tokai checks on which necessary indorsements were "forged, missing or otherwise unauthorized" states facts within the terms of the statutory warranty. ■ The disputed issue is whether plaintiffs, as they allege, "are 'other payors' as defined under Section" 4207, inasmuch as the warranty in terms extends only to the payor bank (Tokai) "or other payor . . . ." (85 Cal.App.3d at p. 821.)

The Supreme Court's decision in *Sun 'n Sand, supra,* 21 Cal.3d 671, provides dispositive guidance in resolving this question. In that case an employer sought relief against a collecting-depositary bank at which an unfaithful employee had deposited employer-drawn checks, payable to the bank, which she had altered by raising their amounts. The court first considered "whether Sun 'n Sand, as the drawer of the checks in question, may rely on the warranty provisions" of section 4207. (*Sun 'n Sand, supra,* 21 Cal.2d at p. 680.) The court answered this question affirmatively, and

held "that the drawer of a check whose account is charged is a payor within the meaning of section 4207 and may maintain an action against a collecting bank based on that section's warranties." (*Id.* at pp. 682-683.) Analyzing the text and purposes of section 4207, the court observed, "Although the term 'payor' is more commonly used in reference to the drawee than the drawer, it is not defined anywhere in the Code and hence should not be regarded as a term of art used in a narrow, technical sense; when a check is negotiated, it is the drawer who ultimately 'pays' when his account is charged in the amount of the check." (*Sun 'n Sand, supra,* 21 Cal.2d at p. 682.)

The holding and rationale of *Sun 'n Sand* support treating plaintiffs as payors of the Tokai checks for purposes of section 4207. First, that decision totally refutes FMB's principal argument, that there can be only one payor (in this case Tokai) for purposes of the section. Here, it is alleged, plaintiffs were the ones who ultimately paid the checks, when Tokai charged their loans in process accounts after the checks were presented to it.

That plaintiffs were not the drawers of the checks does not require a different conclusion from *Sun 'n Sand* under the facts alleged. Although Tokai was technically both drawer and drawee, in the former capacity it appears to have acted, at least in part, as plaintiffs' agent. Moreover, the checks were paid from accounts containing Tokai's loans to plaintiffs and also plaintiffs' own owner equity deposits.[2] In sum, plaintiffs' position does not appear so different, legally or practically, from that of the drawer in *Sun 'n Sand* as to require a different application of the statute.

We conclude that the eighth cause of action does state a cause of action for breach of warranty under section 4207, and the demurrer to it should not have been sustained.

### 2. Negligence.

Plaintiffs' 11th cause of action seeks to charge FMB in a more roundabout way for negotiating the checks. Plaintiffs allege that FMB owed them a duty of care in the handling and deposit of the checks, arising from banking regulations and procedures, and that FMB breached that duty "by failing to take commercially reasonable steps to insure the validity of the check endorsements," including but not limited to scrutinizing and confirming them.

The issue with respect to this negligence cause of action is whether FMB owed *plaintiffs* the duty of care asserted. Although several cases have

---

[2]The loan agreements call for disbursement of plaintiffs' deposits first.

tested the sufficiency of negligence claims by drawers against collecting banks by assessing whether the particular circumstances of the checks, indorsements, and depositors should have triggered suspicion (*Sun 'n Sand, supra,* 21 Cal.3d at pp. 693-695; *E. F. Hutton & Co.* v. *City National Bank* (1983) 149 Cal.App.3d 60, 66-68 [196 Cal.Rptr. 614]), FMB does not challenge the sufficiency of the pleading in this regard. Rather, it once more directs its fire at the asserted remoteness and lack of relationship between plaintiffs, on the one hand, and FMB and the checks, of which plaintiffs were neither drawer nor payee, on the other hand.

In support of their position that FMB owed them a duty of care, plaintiffs rely heavily on dictum from *Fireman's, supra,* 85 Cal.App.3d at pages 830-832. There, the court held that section 3418 barred a noncustomer drawer from suing a collecting bank that had negotiated a check on which the drawer's own signature had been forged. But the court went on to opine that the California Uniform Commercial Code does not "preclude a drawer's direct cause of action for common law negligence against a collecting bank for the negligent handling of a check bearing a forged indorsement in all cases." (*Fireman's, supra,* at p. 830.) Moreover, the court explained, the normal rules imposing on collecting banks primary and ultimate liability for invalid indorsements, together with the obligation of commercial reasonableness and the public policy favoring negligent persons' compensating those injured, all supported such a cause of action. "In that both statutory and case law clearly place the burden of loss from a forged indorsement on the party who deals with the forger, the foreseeability of the risk to the drawer, if such checks are handled in a negligent manner, is therefore direct and immediate. . . . Therefore, 'the chief element in determining whether defendant owes a duty or an obligation to plaintiff . . .' is present . . . ." (*Id.* at p. 831.)

We agree that relevant legal and practical considerations militate in favor of a rather expansive duty of care by collecting banks in dealing with indorsements of checks they negotiate. And on the facts before us, we cannot say that plaintiffs' status and posture precluded FMB from owing such a duty to them.[3] Although once again plaintiffs were not technically drawers of the checks (such as were discussed in *Fireman's*), they occupied a very similar position: Tokai drew the checks on their loan accounts, and on their behalf. Plaintiffs were directly within the "danger zone" of loss. We believe that the

---

[3]In contesting this issue, and elsewhere, FMB asserts that plaintiffs "had no *right, title,* or *interest* in any funds disbursed by Tokai." FMB grounds this assertion in the loan agreements' recital that plaintiffs would have no right to the amounts in the account(s) "other than to have the same disbursed by the Lender in accordance with this Agreement, which disbursements the Lender . . . agrees to make . . . ." Although the point is nowise dispositive, this restriction does not on its face have the sweeping legal significance FMB attributes to it.

facts pleaded were sufficient to justify a duty of care between the parties, and hence that plaintiffs' cause of action for negligence was legally sufficient against the present challenge.

### 3. Conversion.

■ Plaintiffs' ninth cause of action alleges that by accepting and depositing the checks with invalid or missing indorsements, and by presenting them to Tokai, which charged plaintiffs, FMB "converted these instruments to its own use and is liable to plaintiffs pursuant to" section 3419. We hold that plaintiffs do not have standing to assert this species of liability against FMB.

Section 3419, subdivision (1)(c) provides that an instrument is converted when "It is paid on a forged indorsement." In *Allied Concord etc. Corp.* v. *Bank of America* (1969) 275 Cal.App.2d 1, 7-8 [80 Cal.Rptr. 622] (*Allied*), this court anticipated the holding of *Sun 'n Sand, supra*, that the drawer of a check negotiated on a forged indorsement could proceed against the collecting bank for breach of warranty of good title. However, we further held that such a drawer could not sue the collecting bank for conversion, under section 3419 or otherwise. We explained that although a collecting bank's payment on a forged indorsement directly injures the payee of the check, injury to the drawer, and collecting bank liability for it, are contingent at best. They do not ripen unless and until the drawee-payor bank charges the drawer for the check *and* the time to reverse the charge expires. But at that point, "the drawer's cause of action for such conversion only runs against the drawee bank. Thus while a payee is entitled to sue a depositary bank in conversion for money paid to a third person on a forged endorsement which should have been paid to him, a drawer has no such right to sue a depositary or collecting bank for conversion. . . . [H]is cause of action against them is restricted to his contract claim based on the warranties impliedly extended to him by the negotiation of the check . . . ." (*Allied, supra*, 275 Cal.App.2d at p. 8.)

The reasoning and result of *Allied* have been subscribed to by more recent authorities. (E.g., *Lee* v. *Bank of America* (1990) 218 Cal.App.3d 914, 919-920 [267 Cal.Rptr. 387]; *id.* at pp. 929-930 (conc. & dis. opn. of Johnson, J.).) And just as the *Sun 'n Sand* warranty rule applies in this case, in which plaintiffs were not technically drawers, so too should the rules concerning conversion. The complaint does not advance facts justifying treating plaintiffs in a manner superior to normal drawers with respect to those limitations.

Plaintiffs rely on a contrary ruling sustaining a drawer's right to sue a collecting bank for conversion, in *Tedesco v. Crocker National Bank* (1983) 148 Cal.App.3d 1211, 1215-1216 [196 Cal.Rptr. 534]. We cannot follow that decision, not only in view of *Allied* but also because the opinion simply fails to distinguish the rules and relationships respectively applicable to payees and drawers.

Finally, in response to certain of FMB's arguments, plaintiffs argue that they had a sufficient property interest in the funds in the "loans in process" accounts to assert a claim that FMB converted those funds. Detailed discussion of this alternative theory would yield the same adverse conclusion. Moreover, the ninth cause of action plainly alleges conversion of the checks themselves, under section 3419. The demurrer to it was properly sustained.

### 4. *Equitable Subrogation.*

Plaintiffs' 10th cause of action, the final one here at issue, seeks to invoke against FMB the doctrine of equitable subrogation, whereby one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor. In this cause, plaintiffs allege that as a result of FMB's presentment to Tokai of the improperly endorsed checks—conduct constituting negligence, breach of warranty, and conversion—Tokai paid them and then charged them to plaintiffs, who were obligated to pay Tokai for them under the construction loan agreements. In view of FMB's wrongful conduct, plaintiffs conclude, equity requires they be subrogated to Tokai's rights against FMB and permitted to recover the losses FMB caused. We conclude that this cause of action too was properly dismissed.

Plaintiffs correctly note that "'As now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.'" (*Caito v. United California Bank* (1978) 20 Cal.3d 694, 704 [144 Cal.Rptr. 751, 576 P.2d 466].) However, in each such case the following elements must coalesce: "'(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others.'" (*Ibid.*)

■ Plaintiffs rely principally on the proposition that, as pleaded, their equities are superior to FMB's, which allegedly breached statutory duties and acted negligently. In this regard plaintiffs analogize *Commercial Standard Ins. Co.* v. *Bank of America* (1976) 57 Cal.App.3d 241 [129 Cal.Rptr. 91], in which the surety for a builder was held subrogated to the latter's rights against the lending bank, for negligently making excessive disbursements from a construction loan to a defaulting contractor. And by implication, plaintiffs similarly would distinguish the prominent subrogation case of *Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92 [77 P.2d 1084], which held that a surety could not pursue a collecting bank, after reimbursing the plaintiff for checks bearing forged indorsements which the bank had negotiated, because the collecting bank was itself an innocent party— "Neither the [surety] nor the bank was the wrongdoer, but by independent contract obligation each was liable to the [plaintiff]." (*Id.* at p. 102.)

Although the instant case differs from the last-cited one as to FMB's equitable posture, it remains similar in that plaintiffs seek, by having paid Tokai under their independent loan agreements, to obtain Tokai's rights to sue FMB for negligence, breach of warranty under section 4207, and conversion under section 3419. Yet, as held above, two of these redundant rights of action already reside in plaintiffs personally, under modern commercial law; and on the third theory plaintiffs, at least if drawers, would traditionally possess a cause of action against Tokai. (*Allied, supra*, 275 Cal.App.2d at p. 8.) Therefore, to the extent that plaintiffs have paid Tokai—under their loan agreements—for the proceeds of checks which FMB improperly negotiated, plaintiffs' own rights of action are direct, not derivative.

Similarly, plaintiffs' payments to Tokai do not appear to satisfy the qualification of equitable subrogation that the subrogee have paid a debt on which it was not primarily liable. Plaintiffs paid Tokai in accordance with their loan agreements; indeed, at oral argument plaintiffs stressed that they were so obligated for the checks. Plaintiffs' further argument that this was a "primary liability" of FMB addresses not the underlying obligation but the ultimate legal responsibility.

The facts neither require nor warrant resort to the doctrine of equitable subrogation. The 10th cause of action was properly dismissed.

## DISPOSITION

The judgment of dismissal is reversed, and the superior court is directed to enter a new order overruling the demurrers to the eighth and eleventh causes of action of the fourth amended complaint. Plaintiffs shall recover costs.

Nott, J., and Manella, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied July 23, 1992.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.