Filed 5/13/20

<u>**CERTIFIED FOR PUBLICATION**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| ZIEVE, BRODNAX & STEELE, LLP,<br><br>    Plaintiff,<br><br>    v.<br><br>ASHRAJ SINGH DHINDSA,<br><br>    Defendant and Appellant;<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant and Respondent. | F079665<br><br>(Super. Ct. No. CV-18-004711)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. Marie Sovey Silveira, Judge.

Fores Macko Johnston and Cory B. Chartrand for Defendant and Appellant.

Barrett Daffin Frappier Treder & Weiss, Edward A. Treder and Lawrence D. Harris for Defendant and Respondent.

-ooOoo-

After a nonjudicial foreclosure sale has been completed, the gross sale proceeds must be distributed in the order of priority specified by statute. (Civ. Code, § 2924k, subd. (a)(1)–(4).)[1] First, the costs of foreclosure are paid. Second, the foreclosing

---

[1] All undesignated statutory references are to the Civil Code.

creditor's secured obligations are paid. Third, junior lienors are paid in their order of priority. Lastly, any remaining funds are given to the vested owner of record at the time of the foreclosure sale.

In this case, the foreclosing creditor held a first deed of trust and was satisfied in full by the foreclosure sale proceeds. The claimants to the remaining funds of approximately $160,000 are (1) a junior creditor with a second deed of trust granted by the owners of an undivided 75 percent interest in the real property and (2) the owner of the undivided 25 percent interest that was not encumbered by the second deed of trust. The trial court awarded the entire surplus to the junior creditor. We reverse. The owner of the unencumbered 25 percent interest is entitled to a proportionate share of surplus proceeds.

Our conclusion is based on a 1978 California Supreme Court decision filed a dozen years before the enactment of section 2924k. (*Caito v. United California Bank* (1978) 20 Cal.3d 694 (*Caito*).) We conclude the 1990 enactment of section 2924k did not change the principles set forth in *Caito*, a conclusion implied by a California real estate law treatise that cites *Caito* as good law:

> "If the lien on the interest of one cotenant is junior to a lien on both cotenants' interests, on the foreclosure of the senior lien, the junior lienor is entitled to share in any surplus sales proceeds that represent the proportionate interest of the cotenant whose interest was subject to the junior lien." (4 Miller & Starr, Cal. Real Estate (4th ed. 2019) Holding Title, § 11:13, p. 11-33 (Miller & Starr), citing *Caito*, *supra*, 20 Cal.3d at p. 701.)

Applying this principle about the rights of junior lienors to the undisputed facts of this case, we conclude the creditor holding the second deed of trust encumbering an undivided 75 percent interest in the real property was entitled only to a 75 percent share of the surplus funds. The remaining 25 percent must be distributed to the person who owned the interest that was not encumbered by the second deed of trust.

We therefore reverse the judgment.

2.

## BACKGROUND

The parties assert the material facts essential to the resolution of the issues presented are undisputed and, furthermore, all the issues presented are questions of law subject to independent review on appeal. Based on our review of the record and briefing, we agree the relevant facts are undisputed, the contested issues presented are questions of law, and those questions of law are subject to independent appellate review.

Appellant Ashraj Singh Dhindsa (Owner) is the son and nephew of Manjit Dhindsa (Father) and Malkit Dhindsa (Uncle). In September 1991, Father and Uncle purchased a single-family home located on Nikki Ann Way in Turlock (Property) with a loan secured by a first deed of trust. The lender was World Savings and Loan Association, a federal savings and loan association (World Savings).

In 1993, Uncle executed a grant deed conveying his then 50 percent interest in the Property equally to Father and Owner, as joint tenants. Thus, Owner, who was then two years old, received an undivided 25 percent interest in the Property. The grant deed was recorded in April 1993.

In August 2001, when Owner was 10 years old, Father and Owner executed a quit claim deed purporting to convey their interests in the Property to Uncle. Because Owner was a minor, the attempt to convey his undivided 25 percent interest in the Property was null and void. As a result, Uncle acquired only the undivided 75 percent interest previously held by Father.

In January 2007, Uncle obtained a $225,000 home equity line of credit from World Savings and secured the indebtedness by executing a second deed of trust against the Property.

Later in 2007, Owner, through his mother as guardian ad litem, sued Father, Uncle and the holder of the two deeds of trust, World Savings, to quiet his title in his undivided 25 percent interest in the Property. The trial court conducted a bench trial in March 2009 and filed a judgment in August 2009. World Savings moved to vacate judgment and

3.

enter a new and different judgment—a motion which the court granted. On December 11, 2009, the court entered an amended judgment prepared by counsel for World Savings, which was recorded on December 18, 2009.

The amended judgment concluded (1) Owner was conveyed an undivided 25 percent interest in the Property in 1993; (2) the 2001 quitclaim deed that purported to convey that undivided 25 percent interest to Uncle was null and void and did not affect Owner's interest in the Property in any way; (3) fee simple title to the Property was vested in Owner as to an undivided 25 percent interest and in Uncle as to an undivided 75 percent interest; (4) World Savings had a valid and existing lien against the whole of the fee simple title to the Property under the September 1991 first deed of trust; and (5) World Savings had a valid and existing lien against Uncle's undivided 75 percent interest in the Property under the January 2007 second deed of trust. The amended judgment reiterated this final point, stating:

> "The 2007 Nikki Ann Way [second] Deed of Trust encumbers only defendant Malkit Dhindsa's undivided 75% interest in the Nikki Ann Way Property. The 2007 Nikki Ann Way [second] Deed of Trust does not encumber, and is not enforceable against, [Owner's] undivided 25% interest in the Nikki Ann Way Property."

In 2013, as the result of a corporate merger, Wells Fargo Bank, N.A. (Wells Fargo) became World Savings' successor in interest and, thus, the owner of the debt secured by the first and second deeds of trust. In 2017, Wells Fargo assigned its beneficial interest in the first deed of trust to Wilmington Savings Fund Society, FSB, (Wilmington) as the trustee of the Brougham Fund I Trust.

Later in 2017, Wilmington appointed Zieve, Brodnax & Steele, LLP as substitute trustee to carry out a nonjudicial foreclosure under the first deed of trust. The nonjudicial foreclosure process resulted in a February 2018 trustee's sale. The trustee's deed upon sale states Wells Fargo was the highest bidder at the sale, paying $253,500 for the Property. It also states Wells Fargo was not the foreclosing beneficiary. The amount of

the unpaid debt secured by the first deed of trust was $94,727.54. Thus, after payment of that debt, the trustee's fees and expenses ($3,537.63), and the court's filing fee ($435.00), surplus proceeds of $154,799.83 remained available to potential claimants.

In March 2018, the foreclosing trustee, in accordance with the procedures specified in subdivision (a) of section 2924j, sent a notice of proceeds of sale to the persons and entities that might be entitled to the proceeds. The notice stated the trustee's sale of the Property had been conducted in February and "the proceeds from the Sale exceeded the amount of the foreclosure [expenses] and the indebtedness owed to the foreclosing beneficiary." The notice advised the recipients that, at the time of the trustee's sale, they were listed as having an interest in the Property that was extinguished by the foreclosure sale and, therefore, they might have a claim to all or a portion of the sale proceeds remaining. The notice stated: "If you wish to pursue any potential claim, you must send this office a claim, under penalty of perjury, specifying the amount of the claim to the date of the Trustee Sale, including an itemized statement of principal, interest and other charges *as of the date of the foreclosure*. The claim must be received by this office no later than *thirty (30) days* from the date of this Notice. For your convenience, an Affidavit of Claim has been provided." (Boldface omitted, italics added.) The notice was mailed to Owner at three different addresses.

Later in March, the trustee received a timely claim from Owner stating he was the "Judgment Creditor of Manjit Dhindsa" under an "Amended Judgment on Compl." dated December 11, 2009, and recorded on December 18, 2009. Owner claimed a total amount of $58,382.60. To support his claim, Owner attached a copy of the amended judgment described earlier in this opinion. The parts of the amended judgment significant to this appeal state (1) fee simple title to the Property was vested in Owner as to an undivided 25

5.

percent interest and (2) Owner's interest was not encumbered by the second deed of trust.[2]

In April 2018, Wells Fargo submitted an affidavit of claim for surplus funds stating it was the beneficiary under the second deed of trust and the unpaid principal, interest and other charges secured by that deed of trust totaled $238,501.44 as of the date of the trustee's sale. Wells Fargo claimed all of the surplus proceeds, arguing that, as the holder of the second deed of trust, it was the "junior lienholder or encumbrancer" for purposes of section 2924k, subdivision (a)(3). Wells Fargo asserted it had a higher priority claim than Owner, whose priority was established by section 2924k, subdivision (a)(4). Owner responded, arguing he was entitled to 25 percent of the surplus proceeds because his ownership interest was not encumbered by the second deed of trust.

The trustee was unable to resolve the conflicting claims to the surplus. In December 2018, it filed a petition regarding the unresolved claims in the Stanislaus County Superior Court and deposited the surplus funds with the court pursuant to section 2924j.

In March 2019, after receiving briefing from Wells Fargo and Owner, the trial court held a hearing and took the matter under submission. In June 2019, the court issued its written ruling on the petition regarding surplus funds and ordered the entire surplus be paid to Wells Fargo. Owner filed a timely notice of appeal.

---

[2]     While Owner's description of himself as a "Judgment Creditor of Manjit Dhindsa" and his use of the affidavit of claim for junior lienholders (instead of the affidavit for "Former Owner") may not have been the most accurate way to state the grounds for his claim to the surplus proceeds, the amended judgment attached to his claim clearly identifies (1) his position as the Owner of an undivided 25 percent interest in the fee simple of the Property and (2) the fact that the second deed of trust did not encumber his interest.

# DISCUSSION

## I. JUNIOR REAL ESTATE LIENS

The parties agree that the resolution of their conflicting claims to the surplus sale proceeds involves the interpretation and application of section 2924k, subdivision (a) to the undisputed facts of this case. Consequently, we briefly review some principles of statutory construction and, to establish context for the statute, provide an overview of the creation and priority of liens against real property owned by cotenants.

### A. Statutory Interpretation

When considering questions of statutory interpretation, a court's fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 674.) Courts start with the language of the statute, giving the words their usual and ordinary meaning. (*Ibid.*) Courts "consider the language in the context of the entire statute and the statutory scheme of which it is a part [citation], harmonizing provisions relating to the same subject matter, to the extent possible." (*Satele v. Superior Court* (2019) 7 Cal.5th 852, 858–859.) When the meaning of the language is uncertain, courts should consider the consequences that will flow from a particular interpretation of the statute. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387; see *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1252.) The consequences, of course, include how well the proffered interpretation can be harmonized with other provisions in the statutory scheme relating to the same subject matter. (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

### B. Cotenants' Interests and Rights in Real Property

The legal term "cotenancy" usually designates ownership by several persons of undivided interests in real property. (Miller & Starr, *supra*, § 11:1, p. 11-3 [cotenancies defined].) Cotenants own the real property by one joint title and in one right. (*Id.* at p.

7.

11-4.)  In contrast, ownership in severalty designates ownership by persons of separate parcels or portions of parcels.  (*Ibid*.)

"Each cotenant can sell or encumber his or her interest in the common property without the knowledge, approval, or consent of the other cotenants."  (Miller & Starr, *supra*, § 11:11, p. 11-25.)  "A cotenant can only transfer or encumber his or her undivided interest.…  When the cotenant attempts to dispose of any larger interest, the other cotenants are not bound by the agreement, regardless of the purchaser's good faith."  (Miller & Starr, *supra*, § 11:11, p. 11-25; see *Estate of Baumann* (1988) 201 Cal.App.3d 927, 936.)  Accordingly, "[w]ithout special authority from the other cotenants, one cotenant cannot encumber the entire estate, and any deed of trust … given by only one cotenant affects only his or her interest in the property."  (Miller & Starr, *supra,* at p. 11-26, citing *Caito*, *supra*, 20 Cal.3d at p. 701 and *King v. Oakmore Homes Assn.* (1987) 195 Cal.App.3d 779, 783.)

C.    Impact of Foreclosure

After a nonjudicial foreclosure sale, the foreclosing trustee issues a trustee's deed upon sale.  (See §§ 2924g [conduct of sale], 2924 [finality of sale].)  The trustee's deed upon sale conveys to the purchaser the borrower-trustors' interest as of the date the deed of trust granted by the borrower-trustor was recorded.  (*Homestead Savings v. Darmiento* (1991) 230 Cal.App.3d 424, 437.)  Thus, the purchaser's title is free and clear of all rights of the trustor or anyone claiming under or through the trustor, including rights under liens that attached to the property after the execution of the foreclosed deed of trust.  (*Ibid*.)  Accordingly, when the holder of a senior deed of trust directs the trustee to conduct a nonjudicial foreclosure, the foreclosure sale extinguishes all rights and interests *to the real property* of the junior lienors and the borrower-trustor (or his or her successor in interest).  (See *Cadlerock Joint Venture, L.P. v. Lobel* (2012) 206 Cal.App.4th 1531, 1536.)  However, the junior lienors and the borrower-trustor (or his or her successor in

interest) have rights to the surplus sale proceeds from the foreclosure. The distribution of surplus proceeds is discussed in part I.E., *post*.

D. Foreclosure by Creditors Secured by a Partial Interest

"When a deed of trust is a lien on the estate of only one cotenant, the beneficiary can foreclose the lien against that interest. The foreclosure sale purchaser becomes a tenant in common with the other cotenants[] and may commence a partition action."[3] (Miller & Starr, *supra*, § 11:13, at p. 11-33.) The rights of a junior creditor holding a deed of trust on the estate of only some of the cotenants are defined in part by the following principle: When the holder of a senior lien secured by the interests of all cotenants forecloses on the property, "the junior lienor is entitled to share in any surplus sales proceeds that represent the proportionate interest of the cotenant whose interest was the subject of the junior lien." (*Ibid*., citing *Caito*, *supra*, 20 Cal.3d at p. 701.)

E. Section 2924k

In 1989, the California Legislature adopted the predecessor of section 2924k to address the distribution of the proceeds of a nonjudicial foreclosure sale. (See Stats. 1989, ch. 849, § 1 [former § 2924j].) The summary digest of Legislative Counsel described the new enactment by stating, in part:

> "Existing statutory law does not specify that the gross proceeds received at the sale of real property pursuant to the exercise of a power of sale under a mortgage or deed of trust are applied first to pay the costs of foreclosure, then to the payment of the foreclosed obligation, with any surplus funds paid to the junior lienors in the order of their priority, and that if any excess funds still remain, these excess funds are to be paid to the trustor or mortgagor. [¶] This bill would statutorily specify the above priorities for the distribution of proceeds with respect to a trustee selling real property

---

[3] An *unsecured* creditor of one cotenant may attempt to satisfy its claim by executing against the debtor cotenant's undivided interest in the real property. (Miller & Starr, *supra*, § 11:13, p. 11-32.) After an execution sale, the purchaser—like the purchaser at a foreclosure sale—becomes a tenant in common with the other cotenants and may seek to partition the property. (*Id*. at pp. 11-32 to 11-33.)

under a power of sale held in a mortgage or deed of trust." (Legis. Counsel's Dig., Assem. Bill No. 2079 (1989-1990 Reg. Sess.) 4 Stats. 1989, Summary Dig., p. 295.)[4]

The summary digest then described the procedures adopted to provide for an orderly distribution of the proceeds, which included the trustee sending specified notices and depositing with the court the portion of the proceeds that could not be distributed. Providing the notices and depositing the funds with the court would "discharge[] the trustee from any further responsibility for the disbursement of sale proceeds." (*Ibid.*) The summary digest does not expressly state or suggest that the new legislation changed how foreclosure sale proceeds were distributed under prior, nonstatutory law.

In 1990, the Legislature amended section 2924j and moved the provisions addressing the distribution of foreclosure sale proceeds to the newly created section 2924k. (Stats. 1990, ch. 287, §§ 1–2.) That section provides in relevant part:

"(a) The trustee, or the clerk of the court upon order …, shall distribute the proceeds, or a portion of the proceeds, … of the trustee's sale conducted pursuant to Section 2924h in the following order of priority:

"(1) To the costs and expenses of exercising the power of sale and of sale, including the payment of the trustee's fees and attorney's fees permitted pursuant to subdivision (b) of Section 2924d and subdivision (b) of this section.

"(2) To the payment of the obligations secured by the deed of trust or mortgage which is the subject of the trustee's sale.

"(3) To satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority.

"(4) To the trustor or the trustor's successor in interest. In the event the property is sold or transferred to another, to the vested owner of record at the time of the trustee's sale." (§ 2924k.)

---

[4]     We may consider the summary digests without the need for judicial notice because the digests are published. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1129, fn. 4.)

10.

This statutory text has remained essentially the same since its original enactment in 1989. The changes made by the 1990 enactment are described in the summary digest of Legislative Counsel. (See Legis. Counsel's Dig., Assem. Bill No. 3078 (1989-1990 Reg. Sess.) 5 Stats. 1990, Summary Dig., pp. 113–114.) None of the changes are relevant to the issues presented in this appeal.

II.     INTERPRETATION AND APPLICATION OF SECTION 2924k

In this case, the first deed of trust held by the foreclosing creditor, Wilmington, attached to a 100 percent interest in the Property and the second deed of trust held by Wells Fargo was secured by an undivided 75 percent ownership interest in the Property. Therefore, Owner's undivided 25 percent interest in the property was encumbered by the first deed of trust and not the second deed of trust.

The following legal determinations are not contested. Wilmington's foreclosure under the first deed of trust and the resulting execution and delivery of a trustee's deed upon sale (1) extinguished Wells Fargo's rights and interests under the second deed of trust and (2) conveyed all of Owner's rights and interests in the Property to the purchaser, which happened to be Wells Fargo. (See *Cadlerock Joint Venture, L.P. v. Lobel*, *supra*, 206 Cal.App.4th at p. 1536; *Homestead Savings v. Darmiento*, *supra*, 230 Cal.App.3d at p. 427.) Consequently, the only rights and interests Wells Fargo and Owner continued to hold after the trustee's sale, *in their capacities as a junior lienor and cotenant*, were their residual rights to the surplus proceeds. Stated from another perspective, these two capacities are the only way either party can claim an interest in the surplus sale proceeds. Thus, Wells Fargo did not acquire any claim to the surplus sale proceeds by virtue of purchasing the Property at the trustee's sale.

The principles set forth in *Caito*, if applied to the undisputed facts of this case, lead to the conclusion that Owner is entitled to 25 percent of the surplus sale proceeds because the first deed of trust encumbered his interest in the real property and the second

11.

deed of trust did not. (See *Caito*, *supra*, 20 Cal.3d at p. 701.) Therefore, the legal question raised in this appeal can be reformulated as whether the enactment of section 2924k changed the principles set forth in *Caito*.

Our analysis of whether the legislation changed prior law is guided by principles set forth by our Supreme Court. " ' "A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter ...." [Citations.]' [Citation.]" ' [Citation.] Accordingly, '[t]here is a presumption that a statute does not, by implication, repeal the common law. [Citation.] Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws.' [Citation.]" (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297.)

Applying these principles, we first consider whether the language of sections 2924j and 2924k states directly or implies that the Legislature intended to abrogate the principles set forth in *Caito* and replace them with a rule that expands the claim of a junior deed of trust to all proceeds, whether or not encumbered by that deed of trust. We have located no such language in the statute itself. Second, we consider the legislative history, which in this case is limited to the summary digests of Legislative Counsel. We have located nothing in the digests suggesting the Legislature intended to abrogate *Caito*. To summarize, nothing in the record negates the presumption that section 2924k did not impliedly repeal the common law rule stated in *Caito*. (See *California Assn. of Health Facilities v. Department of Health Services*, *supra*, 16 Cal.4th at p. 297 [presumption against repeals by implication].)

Our inquiry does not end with the statutory text and available legislative history. We also consider whether any judicial decision or any other source has stated or implied that the principles set forth in *Caito* were bad law. In other words, were *Caito*'s principles for the distribution of proceeds between a cotenant with an interest

12.

unencumbered by a junior lien and the holder of that junior lien unfair or illogical within the larger legal context? That legal context consists of the rules governing (1) owners' rights to encumber their property, (2) creditors' rights under deeds of trust, and (3) real property foreclosures. We have located no judicial decisions or secondary authorities criticizing the principles stated in *Caito*.

Accordingly, the record presented, our Supreme Court's guidance for analyzing whether legislation has changed the rules established in a judicial decision, the fact that a widely used secondary authority treats *Caito* as good law, and the results of our other research strongly support the conclusion that the Legislature did not intend the enactment of section 2924k and its predecessor to supersede *Caito* and expand the rights of junior lienors to surplus sale proceeds.

The last step in our analysis considers whether it is possible to harmonize the wording of section 2924k, subdivision (a)(3) with the principles stated in *Caito*. We conclude they can be harmonized by interpreting the phrase "the outstanding balance of obligations secured by any junior liens" to mean the outstanding debt "secured by [a] junior lien[]" *only to the extent the junior lien actually encumbered the property sold in foreclosure*. The reliability of this interpretation is supported by considering the additional words needed to make the contrary interpretation explicit. For instance, the contrary interpretation might have been made express if subdivision (a)(3) had stated the sale proceeds shall be distributed "[t]o satisfy the outstanding balance of obligations secured by any junior liens, *whether the lien was attached to all or a portion of the property*." The consequences of adding the italicized language are significant. Under that language, a creditor holding a second deed of trust on a 1 percent or 5 percent undivided interest in the property could claim a literal statutory interpretation entitles it to have the entirety of its debt satisfied before any surplus sale proceeds reach the owner of the 99 or 95 percent undivided interest not encumbered by that second deed of trust. Such an extreme result appears unintended and, had the Legislature intended to make this

13.

change in law, it is improbable the Legislature would have used the text in the current version of section 2924k to accomplish that change.

By harmonizing subdivision (a)(3) of section 2924k with *Caito*, the phrase "the outstanding balance of obligations secured by any junior liens" does not expand the scope of the junior lien to reach sale proceeds that, under prior judicial decisions, were not subject to the junior lien. Applying this interpretation to the facts of this case, the surplus sale proceeds are not allocated entirely to the balance of the home equity line of credit secured by the second deed of trust because that junior lien only encumbered an undivided 75 percent interest in the Property. Instead, the junior lien receives the share of sale proceeds attributed to the interest encumbered by the lien and the share of sale proceeds unencumbered by the lien go to the next in the statutory order of priority—that is, "the vested owner of record at the time of the trustee's sale." (§ 2924k, subd. (a)(4).)

The foregoing interpretation is internally consistent with interpreting the statutory phrase "in the order of their priority" to mean the second deed of trust had no "priority" with respect to the 25 percent ownership interest to which it did not attach. (§ 2924k, subd. (a)(3).) In other words, the proceeds attributed to the 25 percent interest cannot be distributed pursuant to subdivision (a)(3) of section 2924k because no junior lienor has any "order of … priority" in that interest. As a result, the proceeds attributed to that share pass to the next level of distribution specified in the statute and go to the vested owner of record at the time of the trustee's sale. (§ 2924k, subd. (a)(4).)

In summary, the 2009 judgment and other documents in the appellate record establish that, at the time of the trustee's sale, Owner was the vested owner of record of an undivided 25 percent interest in the property. Because that interest was not subject to any junior lien, subdivision (a)(4) of section 2924k and *Caito*, *supra*, 20 Cal.3d at page 701, entitled Owner to a distribution of 25 percent of the surplus sale proceeds.

**DISPOSITION**

The June 19, 2019 order regarding the distribution of surplus funds is reversed. The trial court is directed to enter a new order distributing 75 percent of the proceeds to respondent Wells Fargo Bank and 25 percent of the proceeds to appellant Ashraj Singh Dhindsa.

Appellant shall recover his costs on appeal.

FRANSON, J.

WE CONCUR:

POOCHIGIAN, Acting P.J.

PEÑA, J.

15.