65 F.3d 174
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BANK OF THE WEST, Plaintiff-Appellee
v.
Barre BARNES, individually and dba B & C Construction,
Defendant-Appellant
 No. 94-15255.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 16, 1995.*
Decided Aug. 25, 1995.
 
 1
 Before: D.W. NELSON and T.G. NELSON, Circuit Judges, and KING,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Barre Barnes, individually and dba B & C Construction, (Barnes) appeals from a district court order affirming the bankruptcy court's judgment of nondischargeability of debt in favor of the Bank of the West (the Bank). We have jurisdiction pursuant to 28 U.S.C. Secs. 158(d) and 1291, and affirm.
 
 BACKGROUND
 
 4
 Barnes was the president of a general contractor, Framing Systems, Inc., which contracted with developers to frame buildings. Framing Systems ordered supplies from Big Creek Lumber and submitted invoices for the lumber to developers. The developers paid the invoices with checks payable to "Framing Systems and Big Creek" and in at least one instance to "Framing Systems/Big Creek." Barnes deposited the checks into an account at the Bank without obtaining Big Creek's endorsement. He would use the funds, replenish them, and later issue a check on the Bank account to Big Creek. Barnes thus unlawfully used funds that belonged to Big Creek.
 
 
 5
 On December 5, 1993, the Bank was notified by Big Creek's bank that four checks were not properly endorsed as drawn and that Barnes was not authorized to obtain the funds. The Bank paid the sums of the four checks to Big Creek, and charged the funds against Barnes' account. An overdraft of $147,094.10 resulted. Barnes eventually entered bankruptcy proceedings. The Bank instituted an adversary proceeding against Barnes. After trial in bankruptcy court, judgment was entered in favor of the Bank. Barnes appealed to district court. After affirmance, Barnes filed the instant appeal.
 
 DISCUSSION
 
 6
 Barnes argues that the district court erred by not finding dischargeable the $65,975.23 in check number 109. "We review the bankruptcy court's findings of fact under the clearly erroneous standard, and its conclusions of law de novo.... The issue of nondischargeability is a question of federal law and is governed by the provisions of the bankruptcy Code." In re Kirsh, 973 F.2d 1454, 1456 (9th Cir.1992) (citations omitted).
 
 
 7
 Under 11 U.S.C. Sec. 523(a)(2)(A), a creditor must prove several elements to preclude a debtor's discharge:
 
 
 8
 (1) that the debtor made the representations;
 
 
 9
 (2) that at the time he knew they were false;
 
 
 10
 (3) that he made them with the intention and purpose of deceiving the creditor;
 
 
 11
 (4) that the creditor relied on such representations; and
 
 
 12
 (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.
 
 
 13
 Id. at 1457 (citation omitted).
 
 
 14
 At the bankruptcy court trial, the parties stipulated to thirty-two findings of fact. Among the findings were (1) "Barnes did not have, and knew that he did not have, the authority or the consent of Big Creek Lumber to deposit the four checks," (2) "each of the four checks specifically represents payment for sums owed to Big Creek Lumber for materials," (3) "Paris Chargin [the maker] intended that the Paris Chargin ... checks were for payment of Big Creek Lumber." Barnes contested elements three and four (intent and reliance) at trial. His primary theory was that the Bank knew of Barnes' practice of presenting joint checks with only his signature, and thus did not rely on his representations.
 
 
 15
 As to all four checks, the bankruptcy court found, inter alia, that Barnes fraudulently represented that he was authorized to negotiate the checks on behalf of the joint payee, Big Creek Lumber. The court found: "[t]he endorsement impliedly represented that Barnes had the exclusive right to the proceeds of the checks and the authority to obtain payment on behalf of Big Creek Lumber. These representations were false." Also, after weighing the credibility of the witnesses, the court found that the bank justifiably relied on the false representations. The district court affirmed. On appeal to this court, Barnes challenges only the finding with respect to Check 109, made payable to "Framing Systems, Inc./Big Creek Lumber Co."
 
 
 16
 Barnes argues that he could not have intended to deceive the Bank because Check 109 was payable to either Framing Systems (his company) or Big Creek Lumber. Check 109 differed from the other checks because the other checks were payable to Framing Systems and Big Creek Lumber. Barnes relies on the then-applicable California Commercial Code Sec. 3116(b), which provided in part that "an instrument payable to the order of two or more persons (a) if in the alternative is payable to any one of them ... may be negotiated, discharged or enforced by any of them who has possession of it." Barnes also argues that the district court erred in ruling that, in offering check 109 for deposit, he falsely represented his "title" to the checks.
 
 
 17
 Initially, the Bank responds by asserting that Barnes has waived this issue by failing to raise it below. A review of the record reveals that Barnes argued the point with the district court:
 
 
 18
 Mr. Hartman: [Check 109], that's a "slash" check. You don't need the other person's consent. Yet, the trial judge, your honor, knowing that was a "slash" check that Mr. Barnes deposited, still did not take that into consideration[.].
 
 
 19
 The point was discussed at length before the district court:
 
 
 20
 The Court: It does appear to the court, Ms. Cray, if there is a check that is payable which the bank is understanding to be either/or ... wouldn't that be a dischargeable debt if the check were made payable to one or the other?
 
 
 21
 Ms. Cray: .... The question is: who does the maker intend the money to go to if the maker intends it to go to the payer [sic] who did not sign. We were previously with the representation Mr. Barnes had a jointly payable check with a slash instead of an "and." He signed and endorsed the check. By virtue of that endorsement, he represented with the other checks the same thing, that he had the authority to endorse the check, and he was entitled to the proceeds of the check.
 
 
 22
 The Court: He did the way the thing was made; didn't he?
 
 
 23
 ....
 
 
 24
 Ms. Cray: The maker of the check intended that the proceeds go to Big Creek Lumber....
 
 
 25
 ....
 
 
 26
 The Court: ... Barnes had absolutely no claim to the funds. You agree that's the evidence?
 
 
 27
 Mr. Hartman: Your Honor, it was intended to Big Creek Lumber. I think that's undisputed.
 
 
 28
 The point was adequately preserved. Accordingly, the Bank's first argument fails.
 
 
 29
 On the merits, however, the Bank prevails. Even if Cal.Comm.Code Sec. 3116(b) provided that Barnes could alone endorse an "either/or" check, the trial court found (indeed, the parties stipulated) that "Barnes did not have ... the authority or the consent ... to deposit the four checks." The record indicates that check 109 was part of a larger scheme for Barnes to endorse joint checks, use the funds for a period of time as a type of interest-free loan, and later pay the supplier (in this case Big Creek). The trial court found that Barnes' intent was to use jointly owned money for his own business purposes while intending to pay it to the rightful owner later. Barnes intended to deprive the Bank of its funds if the checks were dishonored. The parties stipulated that check 109 represented funds payable to Big Creek that were intended to be paid to Big Creek. Under these circumstances, the trial court was not clearly erroneous in concluding that Barnes acted with "the intention and purpose of deceiving the creditor." Although Barnes did not forge endorsements and it is possible that the Bank might not have been able to recover for breach of presentment warranties,[1] the evidence was sufficient for a finding of nondischargeability under 11 U.S.C. Sec. 523(a)(2)(A).
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 See Sehremelis v. Farmers and Merchants Bank of Long Beach, 7 Cal.Rptr.2d 903, 905 (Cal.App.1992) (warranty of "good title" refers to validity of chain of necessary endorsements, that is, to whether instrument presented contains all necessary endorsements and whether endorsements are genuine or other deemed effective)