T.C. Memo. 2021-51

UNITED STATES TAX COURT

DANIEL S. JACOBS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7118-19.                              Filed May 5, 2021.

<u>Daniel S. Jacobs</u> and <u>Brian P. Ketcham</u>, for petitioner.

<u>Laura J. Mullin</u> and <u>Michael K. Park</u>, for respondent.

MEMORANDUM OPINION

TORO, <u>Judge</u>:  This case is before the Court on a motion for reasonable
litigation or administrative costs filed by petitioner, Daniel S. Jacobs, pursuant to
section 7430 and Rule 231.[1]  As described further below, we conclude that

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax

**[\*2]** Mr. Jacobs is not entitled to the costs he claims because the position of the United States was "substantially justified" within the meaning of section 7430(c)(4)(B). We therefore will deny the motion.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the declarations and exhibits attached thereto, and the parties' joint stipulation of settled issues. These facts are stated solely for the purpose of ruling on the motion and not as findings of fact in this case. See Ramey v. Commissioner, 156 T.C. ___, ___ (slip op. at 6) (Jan. 14, 2021). Mr. Jacobs resided in California when he filed his petition.

A.    Mr. Jacobs' Business Activity and Residency

Mr. Jacobs is a full-time college professor who has published a book and also represents clients as a lawyer. Before becoming a professor, Mr. Jacobs worked for nearly 20 years as a trial lawyer with the U.S. Department of Justice. For most of 2014 and 2015--the tax years at issue here--Mr. Jacobs resided in Washington, D.C., where he worked full time as a professor at American

Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] University and also taught once a week as an adjunct professor at George Washington University. Both universities issued Forms W-2, Wage and Tax Statement, for 2014 and 2015 reporting the compensation they paid to Mr. Jacobs as wages. Mr. Jacobs earned no income from providing legal services in 2014 and 2015.

From May 18 to August 18, 2014, Mr. Jacobs also held an uncompensated position as a "Visiting Scholar" at the University of California, Los Angeles ("UCLA"). UCLA's Visiting Scholar positions are available to academics on leave from appointments at other institutions of higher education or research. UCLA also offers visiting positions for professionals or self-employed individuals who are not academics. These individuals are given the title "Visitor (Professional)." As noted, UCLA appointed Mr. Jacobs as a Visiting Scholar and did not appoint him as a Visitor (Professional).

While at UCLA, Mr. Jacobs performed research for and drafted a book titled "BP Blowout: Inside the Gulf Oil Disaster" (the "BP Book"), which was published in 2016 and was expected to begin generating royalties in 2017. In the Statement of Objective that he submitted to UCLA when applying to become a Visiting Scholar, Mr. Jacobs explained that he had "been researching the 2010 BP Oil Gulf Disaster since becoming a full-time academic in the same year."

[*4] Mr. Jacobs frequently made arrangements concerning the BP Book and his UCLA appointment using his American University email.

On August 31, 2015, Mr. Jacobs left his teaching position at American University and moved permanently to California. After Mr. Jacobs moved, he took a position as a professor at Loyola Marymount University. Although Mr. Jacobs gained admission to the California Bar in 2013, he did not represent clients as an attorney in California until 2016, when he accepted a part-time "of counsel" position with a Los Angeles-based law firm.

B.    Internal Revenue Service ("IRS") Examination for Tax Years 2014 and 2015

On his Forms 1040, U.S. Individual Income Tax Return, for the tax years 2014 and 2015, Mr. Jacobs claimed $33,787 and $19,940, respectively, as deductions on Schedule C, Profit or Loss From Business. These deductions generally related to payments for meals and lodging for Mr. Jacobs' Visiting Scholar position at UCLA, costs for the business use of Mr. Jacobs' home, bar dues and other professional fees, and travel expenses incurred for various trips to California, Florida, Louisiana, New York, Washington State, and Paris, France. The 2014 return described Mr. Jacobs' business as "Attorney/Professor." The 2015 return described Mr. Jacobs' business as "Attorney/Professor/Author."

[*5]   1.   <u>Tax Year 2014</u>

Mr. Jacobs' 2014 income tax return was selected for examination and assigned to Examiner Angelica Jones with the IRS Correspondence Exam office in Memphis, Tennessee.  The Memphis Correspondence Exam office first contacted Mr. Jacobs by letter in October 2016.  The letter advised him that his Schedule C deductions were under audit and requested documentation to support those deductions.

In response, in December 2016, Mr. Jacobs submitted a letter of explanation with 28 pages of documentation, including correspondence related to his Visiting Scholar position at UCLA, credit card statements, and a summary list of expenses for 2014.  The letter explained that Mr. Jacobs' expenses were incurred in conjunction with a "fledging [sic] business as an attorney-scholar" that he was developing in Washington, D.C., and California, as well as internationally.  (As noted above, the return had described the business as "attorney/professor.")  The letter indicated that the business was distinct from Mr. Jacobs' employment at American University and that it produced limited income from teaching a single course (one night a week) at George Washington University on a "semester-by-semester contract basis."  The letter also stated that the "vast majority" of Mr. Jacobs' expenses were incurred from May 18 to August 18, 2014, while he

[*6] was a Visiting Scholar at UCLA researching and drafting the BP Book. Mr. Jacobs explained that he intended his attorney-scholar business to eventually supplement the income from his full-time employment at American University.

The list of expenses that Mr. Jacobs provided with the letter included some basic information about each expense, but generally failed to explain specifically why the expenses were ordinary and necessary in relation to his attorney-scholar business or why the expenses related to that business as opposed to his full-time employment as a professor at American University. For example, some expenses had labels such as "Local Transportation," "Paris trip (1/9 Deliver lecture at HEC Business School)," and "Phoenix trip (Attend Green Biz Conference)," with no further explanation.

In February 2017, the Memphis Correspondence Exam office informed Mr. Jacobs by letter that the information he had provided was insufficient to substantiate his expenses. On April 3, 2017, the Commissioner issued to Mr. Jacobs a notice of deficiency for the 2014 tax year, which disallowed all the deductions Mr. Jacobs had claimed on Schedule C. Both the letter and the notice were sent to the wrong address.

The April 3, 2017, notice was subsequently rescinded after the Taxpayer Advocate Service ("TAS") opened a case on Mr. Jacobs' behalf (and at his

[*7] request).  The TAS assisted Mr. Jacobs in arguing successfully that he had not been given the opportunity to present further substantiating documents.

Mr. Jacobs then made a new submission to the Memphis Correspondence Exam office.  That submission included 24 pages of annotated monthly credit card statements.  Most of these pages had been provided previously in Mr. Jacobs' December 2016 submission, but the annotations were new and were intended to replace highlighting in the prior submission that had not been visible to the Memphis Correspondence Exam office because of the way the materials were submitted.  The new submission also included several pages of credit card statements that were not part of the December 2016 submission.  After reviewing the additional documents, the Memphis Correspondence Exam office determined once more that the information was insufficient to support Mr. Jacobs' claimed deductions.  In particular, the Memphis Correspondence Exam office concluded that Mr. Jacobs' expenses appeared to be personal or related to the Form W-2 income that he had received from George Washington University and thus belonged on Schedule A, Itemized Deductions, rather than Schedule C.

[*8]   In August 2017, at Mr. Jacobs' request, the Memphis Correspondence Exam office forwarded the case to the IRS Office of Appeals ("IRS Appeals")[2] in Memphis, Tennessee.

In January 2018, Mr. Jacobs filed a formal request with the U.S. Treasury Inspector General for Tax Administration ("TIGTA") for an investigation into alleged misconduct by examiners in the Memphis Correspondence Exam office. The request alleged that the Memphis Correspondence Exam office had made unnecessary and "increasingly burdensome" requests for documentation, had threatened to issue an unwarranted deficiency notice, had summarily rejected Mr. Jacobs' claimed deductions despite the documentation he had provided, and had "stonewalled" for five months Mr. Jacobs' request for a managerial conference call.  TIGTA opened an active investigation into the Memphis Correspondence Exam office and tracked the status of Mr. Jacobs' case by initiating correspondence with upper-level management of that office.

---

[2]On July 1, 2019, the IRS Office of Appeals was renamed as the Internal Revenue Service Independent Office of Appeals.  See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001(a), 133 Stat. at 983 (2019).  As the events in this case predate that change, we use the name in effect at the times relevant to this case, i.e., the Office of Appeals.

[*9]  2.    <u>Tax Year 2015</u>

In September 2017, Mr. Jacobs' 2015 income tax return was selected for examination and assigned to the IRS Correspondence Exam office in Brookhaven, New York.  Examination Operation Manager Diane Muse contacted Mr. Jacobs about the exam by letter in December 2017.  The letter advised Mr. Jacobs that his Schedule C deductions were under audit and requested documentation to support those deductions.

In response, in January 2018, Mr. Jacobs sent a letter, this time explaining that the expenses were incurred in conjunction with a fledgling "attorney-scholar-author" business that Mr. Jacobs had started after his retirement from Federal service.  The letter further explained that in 2015 Mr. Jacobs was focused primarily on developing his business in California, which required frequent west coast travel before he moved there.  According to the letter, Mr. Jacobs' business development activities in California consisted mainly of conducting research for and writing the BP Book and networking to establish a legal practice.[3]  Other than noting that Mr. Jacobs' research assistant was in California, the letter did not explain why

---

[3]The "Deepwater Horizon" oil spill--the focus of the BP Book--began in April 2010 in the north-central region of the Gulf of Mexico (roughly 41 miles off the coast of Louisiana).  British Petroleum has its U.S. headquarters in Houston, Texas.

[*10] Mr. Jacobs needed to travel to the west coast to research and write the BP Book. Nor did the letter explain the type of legal practice Mr. Jacobs hoped to establish, the nature of his networking activities, or how those activities supported his attorney-scholar-author business.

Mr. Jacobs' letter attached 31 pages of supporting documentation similar to the documentation provided for 2014, including a list of expenses and annotated credit card statements. The list of expenses again included basic information such as the amount and a general description of each expense, but in many cases failed to explain specifically how certain expenses (e.g., expenses related to "Miami trip: Business Development," "Conference Attendance," "Networking," or "Earth Day Brunch") were related to Mr. Jacobs' attorney-scholar-author business. Nor did the list explain specifically why each expense was unrelated to Mr. Jacobs' ongoing employment as a professor at American University.

In April 2018, the Brookhaven Correspondence Exam office issued a Form 886-A, Explanation of Items, requesting additional information from Mr. Jacobs, including documentation explaining his "profession as an attorney and author," individual logs to substantiate his expenses, explanations of why the expenses were "ordinary and necessary" to his business, and a copy of his attorney license. After a call with Acting Department Manager Michael Birsner in May 2018, Mr. Jacobs

[*11] provided six exhibits to corroborate his 2015 expenses in lieu of the information requested by the Brookhaven Correspondence Exam office. These exhibits included information on lodging expenses, email correspondence concerning research for the BP Book, and an entertainment log of expenses from meetings with individuals Mr. Jacobs interviewed while drafting the BP Book.

On July 23, 2018, the Brookhaven Correspondence Exam office issued a Letter 692, Request for Consideration of Additional Findings, that reiterated its intention to disallow Mr. Jacobs' deductions.[4] The letter attached two Forms 886-A. The first was a copy of the April 2018 Form 886-A, while the second requested additional documentation. Specifically, the new Form 886-A requested that Mr. Jacobs separate the expenses he had documented in May 2018 to show which were incurred in furtherance of his attorney-scholar-author business and which were related to his full-time position at American University.

On July 30, 2018, Mr. Jacobs signed a Form 12203, Request for Appeals Review, to request formally that the 2015 examination be forwarded to IRS Appeals. Mr. Jacobs indicated that he disagreed with the Brookhaven

---

[4]The Letter 692 does not appear in the administrative file on record with the Court, but was described in a written memorandum from Mr. Jacobs to IRS Appeals.

**[*12]** Correspondence Exam office's determination because the office had deprived him of due process by issuing "automated form denials" of his expense deductions without considering the documentation he provided and had "mischaracteriz[ed]" his expenses as Form W-2 employee expenses. The Brookhaven Correspondence Exam office sent the case to IRS Appeals on September 3, 2018.

C.     Review by IRS Appeals

As already noted, consideration of Mr. Jacobs' case for 2014 initially was forwarded to the IRS Appeals office in Memphis, Tennessee. At Mr. Jacobs' request, however, in January 2018, the case was transferred to the IRS Appeals office in Los Angeles, California. There, the case was assigned to Appeals Officer Melissa Young. In February 2018, Appeals Officer Young gave Mr. Jacobs approximately one month to submit any new supporting documentation to IRS Appeals. Mr. Jacobs timely faxed Appeals Officer Young a letter together with a memorandum in support of his appeal and 55 items of additional documentation.

In the memorandum, Mr. Jacobs again described his attorney-scholar-author business, stating that the BP Book was to be his "entrée" to legal, consulting, and speaking engagements. He reiterated that the "vast majority" of his expenses "related primarily" to the BP Book, and that the "majority were incurred primarily"

**[*13]** while he was a Visiting Scholar at UCLA. Mr. Jacobs also explained that the different activities making up his single business often overlapped and were interrelated, and he provided several examples of connections made while he was pursuing one activity (e.g., teaching at George Washington University) that ultimately were helpful with another activity (e.g., publishing the BP Book). Based on these examples, the memorandum argued it was "abundantly clear" that all Mr. Jacobs' deductions were for bona fide expenses associated with his attorney-scholar-author business.[5]

The exhibits attached to Mr. Jacobs' memorandum related to the 2014 tax year and included information concerning the BP Book, email correspondence discussing lodging and research meetings, and other documents such as receipts and canceled checks. Appeals Officer Young informed Mr. Jacobs that his new information would be returned to the Memphis Correspondence Exam office for review and that, in keeping with IRS Appeals' policy, he would need to sign a

---

[5]The memorandum, along with an attached document titled "Request for TIGTA Investigation of Misconduct by Memphis Service Center Employees," described a number of instances in which Mr. Jacobs felt the examination team had mishandled his audit. For example, Mr. Jacobs requested in-person meetings with examiners at multiple junctures, but was never granted one. As discussed further below, those allegations do not affect the outcome of this case, so we do not enumerate them here.

[*14] Form 872, Consent to Extend the Time to Assess Tax, to extend the period of limitations for the 2014 tax year.

In April 2018, Mr. Jacobs sent to Area Appeals Manager Patrick McGuire a letter requesting that the review of his 2014 return be reassigned to a different IRS Appeals officer, or in the alternative, that his new supporting materials be assigned to an examiner in Los Angeles, California, rather than Memphis, Tennessee. In May 2018, Appeals Team Manager Keith Matsuda spoke by phone with Mr. Jacobs to explain IRS Appeals' procedures for reviewing Mr. Jacobs' new documentation. During the call, Mr. Matsuda also explained that Mr. Jacobs' request to reassign the review of his 2014 return would be denied. Mr. Jacobs signed a Form 872 to extend the period of limitations on the same day.

In July 2018, Appeals Officer Young informed Mr. Jacobs by letter that an examiner had reviewed his new documentation. The letter included the examiner's handwritten notes, which stated that the documentation did not alter the original decision to disallow Mr. Jacobs' deductions because the expenses appeared to be personal in nature. Appeals Officer Young scheduled an in-person Appeals conference for September 2018 and invited Mr. Jacobs to submit a written response to the examiner's findings. She advised that both the examiner's findings and Mr. Jacobs' response would be considered in settling the case. Because

[*15] Mr. Jacobs was out of town and unable to attend the September Appeals conference as scheduled, the parties worked to find an alternative date. After a few proposals and counterproposals, the in-person conference was rescheduled for November 14, 2018.

While Mr. Jacobs and Appeals Officer Young were discussing possible dates for an in-person conference in the fall, Mr. Jacobs' 2015 case was forwarded to IRS Appeals and assigned to Appeals Officer Young so that she could review the 2014 and the 2015 returns together. In September 2018, Mr. Jacobs faxed a memorandum to Appeals Officer Young in support of his appeal for both years. The memorandum explained the procedural background of the case and set out his substantive and procedural concerns with the 2014 and 2015 audits.

For the 2014 tax year, Mr. Jacobs asserted that expenses related to his Visiting Scholar position had been "amply documented" by the supporting documentation previously provided. He also reiterated that his attorney-scholar-author business was a single enterprise, separate and distinct from his full-time position at American University. He maintained that the UCLA appointment related to the attorney-scholar-author business rather than the full-time position at American University because he used the appointment to conduct research for and write the BP Book.

[*16] For the 2015 tax year, Mr. Jacobs asserted that his expenses were separately explained and documented in the information he provided to examiners in January and May 2018. He also argued that he wrote the BP Book as part of a business--and not as part of a hobby--because the book was published by a prestigious publisher and began generating royalties in 2018. Similarly, he claimed that his work as an attorney could not have been a hobby because he took the California bar and eventually (in 2016 and 2018) entered into two contingency fee contracts to provide paid legal services in California. He maintained that the BP Book helped secure these contracts.

Mr. Jacobs' memorandum also attached seven additional exhibits, including email correspondence with the Brookhaven Correspondence Exam office, email correspondence related to Mr. Jacobs' lodging during his Visiting Scholar appointment at UCLA, a royalty payment receipt from 2018, and an engagement letter pertaining to legal services he provided in 2018.

In October 2018, Appeals Officer Young sent Mr. Jacobs a letter acknowledging the receipt of his documentation and confirming the in-person conference previously scheduled for November 14, 2018. The letter also explained that a request Mr. Jacobs had submitted to have a TAS representative present at the hearing had been denied.

[*17] The record is not entirely clear on precisely what happened next. The meeting scheduled for November 14, 2018, did not take place. Instead, on November 13, a day before the scheduled conference, both the 2014 and 2015 tax years were reassigned to Appeals Officer David Guerrero with instructions to contact Mr. Jacobs before December 14, 2018, to schedule another conference. (This may have been done in response to Mr. Jacobs' request that the case be reviewed by someone other than Appeals Officer Young, a request supported by the TAS's intervention on Mr. Jacobs' behalf.) But that instruction was countermanded almost as soon as it was given. On November 16, Appeals Officer Guerrero was instructed not to schedule a conference with Mr. Jacobs until after management at IRS Appeals had determined a course of action in response to demands from the TAS to be present at Mr. Jacobs' conference. As best we can tell, this new course of action was attributable to a memorandum the TAS sent to IRS Appeals on November 7, 2018. That memorandum asked that IRS "Appeals should refrain from holding Mr. Jacobs' hearing until Appeals' policy is modified" to permit a TAS representative to attend. Discussions between IRS Appeals and the TAS on this topic ensued.

[*18] D.    Issuance of the Notices of Deficiency

On December 12, 2018, Appeals Officer Guerrero sent Mr. Jacobs a letter requesting additional extensions of the limitations periods for the 2014 and 2015 tax years, as those periods were due to expire on April 30 and August 31, 2019, respectively.  The letter proposed extending the limitations periods to December 31, 2019, for both years.  After Mr. Jacobs expressed concern over agreeing to the extensions, Area Appeals Manager Patrick McGuire (to whom Mr. Jacobs had written previously) sent a letter on December 19, 2018, advising Mr. Jacobs that extensions were necessary to allow IRS Appeals sufficient time to review his case.  On the same day, Appeals Officer Guerrero spoke with Mr. Jacobs by phone to discuss the extensions, and Mr. Jacobs indicated he would not agree to extend the limitations periods.

On January 30, 2019, Appeals Acting Team Manager Joseph Haynes, Appeals Officer Guerrero's supervisor, called Mr. Jacobs and left a voice message advising that IRS Appeals would be closing the case and issuing a statutory notice of deficiency for each year at issue because Mr. Jacobs had not agreed to the extensions.  On the same day, Mr. Jacobs faxed an executed form that proposed to extend the limitations period for the 2014 tax year to June 5, 2019 (an extension of 35 days), a period significantly shorter than the extension to December 31, 2019,

[*19] that had been proposed by IRS Appeals. Mr. Jacobs did not agree to extend the limitations period for the 2015 tax year.

On January 31, 2019, to protect the statute of limitations in keeping with IRS Appeals' policy, Appeals Officer Guerrero issued notices of deficiency for both 2014 and 2015. The notices determined that Mr. Jacobs owed additional tax of $9,461 and $5,201 and accuracy-related penalties under section 6662(a) of $1,892 and $1,040 for 2014 and 2015, respectively. Appeals Officer Guerrero issued the notices with an understanding that the case would be returned to IRS Appeals for additional consideration after a petition and answer were filed in the Tax Court. The anticipated objective of such additional consideration would be to allow Mr. Jacobs to defend his expenses at an in-person conference with IRS Appeals.

E.    Proceedings in Our Court and Eventual In-Person IRS Appeals Conference

On May 6, 2019, Mr. Jacobs filed a timely petition in our Court seeking redetermination of the deficiencies the Commissioner determined for the 2014 and 2015 tax years. On June 26, 2019, the Commissioner filed his answer, requesting that the determinations be upheld. Promptly after the answer was filed, the Commissioner's counsel sent the case back to IRS Appeals to provide Mr. Jacobs with a face-to-face conference.

[*20] On August 20, 2019, Mr. Jacobs and Appeals Officer Guerrero met in person for the conference. At the conference, the parties reviewed Mr. Jacobs' expenses "line by line," focusing on whether each expense was ordinary and necessary. The parties also reviewed the documentation Mr. Jacobs had provided to substantiate each of his claimed expenses. Appeals Officer Guerrero's notes from the conference include a number of questions that he and Mr. Jacobs discussed pertaining to Mr. Jacobs' business activities. Specifically, the questions addressed the business purpose of Mr. Jacobs' UCLA appointment, the reasons for his business trips (particularly those outside the United States), whether some of his expenses were "employee business expenses," whether his Schedule C was "all about the book" or also related to consulting, and the reasons for his frequent west coast travel during 2014 when he resided in Washington, D.C.

After considering Mr. Jacobs' explanations during the IRS Appeals conference as well as the documentation on record, Appeals Officer Guerrero sent Mr. Jacobs a settlement proposal on January 6, 2020. The proposal allowed most of the deductions that Mr. Jacobs had claimed for both years. On February 5, 2020, Mr. Jacobs responded by fax to confirm his receipt of the proposal and to explain that he would determine next steps after a colleague who

[*21] had been assisting with the examinations had reviewed the proposal and prepared a report on the remaining contested expenses.

On June 8, 2020, Appeals Officer Guerrero advised the Commissioner's counsel that he was returning the case for trial preparation because he had not received a response from Mr. Jacobs on the settlement proposal. On June 18, 2020, the Court held a status conference with the parties. During that conference, the Commissioner's counsel reported that the Commissioner was conceding the case in full and had sent Mr. Jacobs a letter to that effect. The parties filed a stipulation of settled issues reflecting the concession on July 23, 2020.

On August 26, 2020, Mr. Jacobs filed the motion now before us, requesting an award of $31,604 in litigation costs, including expert witness fees and legal fees. The Commissioner filed a response on October 22, 2020, and Mr. Jacobs filed a reply on November 25, 2020. The Commissioner contends that Mr. Jacobs is not entitled to an award of litigation costs because the position of the United States in the proceedings before our Court was "substantially justified." The Court held a hearing on the motion on February 17, 2021.

**[*22]**                                      Discussion

Having set out the factual background, we turn next to the applicable legal

framework and the merits of the motion.

I.      Applicable Legal Framework

As relevant here, section 7430 provides for an award of reasonable litigation

costs to a taxpayer in a proceeding brought by or against the United States

involving the determination of any tax, interest, or penalty.[6]  Such an award may

be made where the taxpayer can demonstrate that he (1) is the "prevailing party,"

(2) has exhausted available administrative remedies within the IRS,[7] (3) has not

unreasonably protracted the proceeding, and (4) has claimed "reasonable" costs.

Sec. 7430(a) and (b)(1), (3), (c)(1) and (2); Morrison v. Commissioner, 565 F.3d

658, 661 (9th Cir. 2009), rev'g on other grounds T.C. Memo. 2006-103; Alterman

Tr. v. Commissioner, 146 T.C. 226, 227 (2016).  These requirements are

conjunctive; failure to satisfy any one of them precludes an award of costs to the

taxpayer.  See Alterman Tr. v. Commissioner, 146 T.C. at 227; see also Minahan v.

---

[6]Section 7430(a) also provides for an award of reasonable administrative costs incurred in connection with an administrative proceeding within the IRS. Mr. Jacobs has not requested such an award here.

[7]This requirement applies only as to litigation costs.  See sec. 7430(b)(1).

**[\*23]** <u>Commissioner</u>, 88 T.C. 492, 497 (1987). The decision to award fees is within the sound discretion of the Court. <u>See</u> <u>Morrison v. Commissioner</u>, 565 F.3d at 661 n.3 ("A decision by the Tax Court denying an award of attorneys' fees is reviewed for abuse of discretion." (citing <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1143 (9th Cir. 1992), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1991-144)).

Of the four requirements outlined above, only the first and last are at issue here. The Commissioner concedes that Mr. Jacobs exhausted all available administrative remedies (the second requirement) and did not unreasonably protract the proceeding (the third requirement). The discussion that follows focuses on the first requirement--whether Mr. Jacobs qualifies as the "prevailing party." Although the Commissioner also disputes the last requirement--whether Mr. Jacobs has claimed "reasonable" costs--in light of our resolution of the "prevailing party" issue, we need not address the last requirement.

To be the "prevailing party," a taxpayer must satisfy certain net-worth requirements (not at issue here)[8] and must "substantially prevail[]" with respect to the amount in controversy or "the most significant issue or set of issues presented."

---

[8]Under section 7430(c)(4)(A)(ii), a "prevailing party" cannot have a net worth exceeding $2 million. The Commissioner concedes that Mr. Jacobs' net worth does not exceed this threshold.

**[\*24]** Sec. 7430(c)(4)(A).  The taxpayer generally will not be treated as the prevailing party, however, if the Commissioner establishes that "the position of the United States in the proceeding was substantially justified."[9]  Sec. 7430(c)(4)(B)(i).  The Commissioner bears the burden of making that showing. Id.; see also Taxpayer Bill of Rights 2, Pub. L. No. 104-168, sec. 701(b), 110 Stat. at 1463 (1996) (adding current section 7430(c)(4)(B) to shift the burden of proving substantial justification from the taxpayer to the Government); Pac. Fisheries Inc. v. United States, 484 F.3d 1103, 1107 (9th Cir. 2007).  The "position of the United States" in a Tax Court proceeding is that set forth in the Commissioner's answer. See sec. 7430(c)(7)(A); Huffman v. Commissioner, 978 F.2d at 1148; Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997).

There is no dispute that Mr. Jacobs substantially prevailed with respect to the amount in controversy.  The issue, therefore, is whether the position reflected in the Commissioner's answer--i.e., that Mr. Jacobs' deductions should be disallowed--was substantially justified when the answer was filed.

---

[9]Section 7430(c)(4)(E)(i) provides a limited exception to this rule in situations involving a "qualified offer."  See also Fitzpatrick v. Commissioner, T.C. Memo. 2017-88, at \*4.

**[*25]** A position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" or has a "reasonable basis both in law and fact." Swanson v. Commissioner, 106 T.C. 76, 86 (1996) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)); see also Huffman v. Commissioner, 978 F.2d at 1147. The determination of reasonableness is based on all the facts of the case and the available legal precedents. Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 443. A position has a reasonable basis in fact if there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Underwood, 487 U.S. at 565.[10] A position has a reasonable basis in law if legal precedent substantially supports the Commissioner's position given the facts available to him. Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 443.

"As the Supreme Court has observed, substantially justified means 'more than merely undeserving of sanctions for frivolousness.'" United States v. Yochum (In re Yochum), 89 F.3d 661, 671 (9th Cir. 1996) (quoting Underwood,

---

[10]As we have said before, "[f]or a position to be substantially justified, 'substantial evidence' must exist to support it. Pierce v. Underwood, 487 U.S. 552, 564 (1988). 'That phrase does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."' Id. at 564-565 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938))." Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997).

**[\*26]** 487 U.S. at 566). The Commissioner's position may be substantially justified even if incorrect "if a reasonable person could think it correct." Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 443 (quoting Underwood, 487 U.S. at 566 n.2). Courts have found that the Commissioner's position was substantially justified in cases that involve primarily factual questions. See, e.g., Bale Chevrolet Co. v. United States, 620 F.3d 868 (8th Cir. 2010). The fact that the IRS loses a case or makes a concession "does not by itself establish that the position taken is unreasonable," but is "a factor that may be considered." Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 443.

II.     Application to the Motion

For both the 2014 and 2015 tax years, the burden was on Mr. Jacobs to establish that his expenses met all the requirements for deductibility under section 162. See Rule 142(a); Frost v. Commissioner, 154 T.C. 23, 29 (2020); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). When the Commissioner filed his answer on June 26, 2019, Mr. Jacobs had provided IRS Appeals with a list of his expenses, annotated credit card statements, and certain receipts to substantiate his deductions. Mr. Jacobs had also provided a number of emails, letters, and similar materials, as well as memoranda that described his various business activities.

**[*27]** Based on this information, we agree with Mr. Jacobs that by June 26, 2019, he had largely established the amount, and to a degree the nature, of his expenses. That is, Mr. Jacobs had established that he actually incurred expenses in the relevant amounts and had provided some descriptions of them. But these showings are insufficient for Mr. Jacobs to prevail.

To deduct an expense under section 162, a taxpayer must establish that the amount was an ordinary and necessary expense paid or incurred in carrying on a trade or business. Sec. 162(a); see also INDOPCO, Inc. v. Commissioner, 503 U.S. at 84. To deduct the expense on Schedule C, as Mr. Jacobs did, the taxpayer must also show that the expense was not associated with the taxpayer's activities as an employee. See, e.g., Weber v. Commissioner, 103 T.C. 378, 386 (1994) ("To be properly reported on Schedule C, a taxpayer's expenses must come from a trade or business of his own, other than that of being an employee."), aff'd, 60 F.3d 1104 (4th Cir. 1995). Additionally, for certain types of business expenses, such as traveling expenses (including expenses for meals and lodging while away from home) and expenses for entertainment or recreational activities, section 274(d)

**[\*28]** imposes a heightened "strict substantiation" requirement for deductibility.[11]

Based on the record before us, a reasonable person could have concluded that Mr. Jacobs had failed to satisfy this burden by the time the Commissioner filed his answer.

---

[11]    SEC. 274(d).  Substantiation required.--No deduction or credit shall be allowed--

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity,

(3) for any expense for gifts, or

(4) with respect to any listed property (as defined in section 280F(d)(4)),

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *

[*29] In his returns, Mr. Jacobs described his business first as "Attorney/ Professor" (in the 2014 return) and then as "Attorney/Professor/Author" (in the 2015 return). In his later submissions to IRS Exam and IRS Appeals, Mr. Jacobs described his business variously as an "attorney-scholar" business and an "attorney-scholar-author" business. Some of his submissions asserted the business included three activities: (1) writing the BP Book, (2) representing clients as an attorney, and (3) teaching at George Washington University. Mr. Jacobs maintained that these three activities were part of the same business and that the business was distinct from his work as a full-time academic at American University.

We agree with the Commissioner that when the answer was filed sufficient doubt remained as to how these three activities related to each other and to Mr. Jacobs' employment at American University. There also was reason to question which of Mr. Jacobs' expenses related to each activity. For example, a reasonable person might have asked why Mr. Jacobs' teaching role at George Washington University related to a new attorney-scholar business, as opposed to "that of being an employee." See Weber v. Commissioner, 103 T.C. at 386. After all, George Washington University had reported Mr. Jacobs' compensation as wages on a Form W-2. So, at least from the University's perspective, Mr. Jacobs

[*30] was acting as an employee in teaching at George Washington University, rather than as an independent contractor running his own business.

Similarly, the BP Book and Visiting Scholar appointment at UCLA could have been viewed as furthering Mr. Jacobs' academic career rather than his attorney-scholar business. Mr. Jacobs described himself as a full-time academic in his application to UCLA and frequently made arrangements concerning the BP Book and his UCLA appointment using his American University email. And, as noted above, under UCLA's own guidelines, Visiting Scholar appointments were reserved for academics on leave from appointments at other institutions of higher education or research. Nonacademics could also hold temporary research appointments at UCLA, but they were given the title "Visitor (Professional)" rather than "Visiting Scholar." In other words, UCLA itself viewed Mr. Jacobs as a

**[\*31]** full-time academic.[12] It was therefore reasonable for the Commissioner to question Mr. Jacobs' characterization of his activities and the associated expenses.[13]

We also agree with the Commissioner that, as of June 26, 2019, Mr. Jacobs had not established that all the claimed amounts were ordinary and necessary expenses of a trade or business. Although Mr. Jacobs had provided descriptions for most of his expenses, the descriptions were brief and often lacked sufficient detail to show how the expenses supported Mr. Jacobs' activities. For example, Mr. Jacobs labeled certain expenses as relating to "conference attendance," "networking," or "business development," without saying more. When confronted with these cursory descriptions, it was reasonable for the Commissioner to request additional information.

---

[12]In a case Mr. Jacobs cited, this Court determined that expenses incurred by a University of Pennsylvania economics professor while serving as a visiting scholar at the California Institute of Technology were ordinary and necessary expenses of his business as a professor. See Cass v. Commissioner, 86 T.C. 1275, 1281-1284 (1986).

[13]A reasonable person could view many of Mr. Jacobs' other expenses in the same way. For example, trips to conferences and certain trips for networking purposes could be interpreted as enhancing Mr. Jacobs' profile as an academic. Indeed, Mr. Jacobs was successful in this regard; he eventually secured a position as a Clinical Associate Professor at Loyola Marymount University.

[*32] Mr. Jacobs' conference with IRS Appeals is instructive in this regard. At the August 2019 conference, Appeals Officer Guerrero discussed Mr. Jacobs' expenses line by line, focusing on how each expense related to Mr. Jacobs' business activities. For example, Appeals Officer Guerrero's notes from the conference included questions for Mr. Jacobs regarding the business purpose of Mr. Jacobs' UCLA appointment, the reasons for his business trips, and whether some of his expenses were "employee business expenses." Mr. Jacobs' oral explanations at the conference were crucial in allowing Appeals Officer Guerrero to fill in the gaps. Based on the record that existed when the Commissioner filed his answer, it was reasonable for the Commissioner to refrain from conceding the case until these questions had been resolved.

III.   Relevance of Prior Administrative Proceedings

Mr. Jacobs argues that the correspondence examination of his returns was badly mishandled and that an in-person conference, which he requested on multiple occasions, should have been scheduled sooner. More specifically, Mr. Jacobs states that he repeatedly offered to "connect the dots" with respect to his deductions in person, but that each time the correspondence examination team and IRS Appeals declined. On this basis, Mr. Jacobs contends that the

**[*33]** Commissioner may not rely on the absence of oral explanations before the Commissioner filed his answer as support for the Government's litigating position.

We agree that there is value in face-to-face meetings and the open and direct communication that such meetings facilitate. When the Commissioner filed his answer, no such meeting had occurred, and that is regrettable. But the absence of certain actions at the administrative level does not preclude the Commissioner's litigating position from being substantially justified.

A variety of factors, not all of which were attributable to the Commissioner's conduct, prolonged the administrative proceedings and delayed an in-person meeting with IRS Appeals.[14] At bottom, Mr. Jacobs asks the Court to hold what happened during the examinations against the Commissioner and invites the Court to conclude that the Commissioner's litigating position cannot be substantially justified if missteps at the administrative level gave rise to the

---

[14]For example, in April 2017, at Mr. Jacobs' request, the TAS opened a case on his behalf and engaged in communications with various components of the IRS in connection with his case. Mr. Jacobs also made several requests to have his IRS Appeals cases transferred to different offices or IRS personnel and to have a TAS representative present during his conference with IRS Appeals. In addition, because of scheduling constraints, he was unavailable for a conference proposed for September 2018. All of these developments contributed to a delay in scheduling an in-person conference with IRS Appeals. Lastly, an in-person conference scheduled for January 10, 2019, was canceled because of the shutdown of the Federal Government.

**[\*34]** litigation, prolonged it, or contributed to its cost.[15] Mr. Jacobs' frustration is understandable, but the analysis he proposes is contradicted by the statute and established caselaw.

Both our Court and the U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie unless the parties agree otherwise, see sec. 7482(b), have repeatedly held that the Commissioner's actions at the administrative level do not determine whether his position in litigation was substantially justified. Rather, our Court evaluates the reasonableness of the Commissioner's position separately for administrative and judicial proceedings. See Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 442; see also, e.g., Kenney v. United States, 458 F.3d 1025, 1032-1033 (9th Cir. 2006) (describing bifurcated approach); Huffman v. Commissioner, 978 F.2d at 1146 (same). As the Ninth Circuit has said: "The plain language of \* \* \* [section 7430] distinguishes administrative from judicial proceedings and does not provide a bridge for conduct or events that span those

---

[15]Although the examinations here may not have been a model of efficiency, the Court finds no bad faith on the part of the IRS. Reasonable disagreements among various components of the IRS regarding the merits of a particular examination or how the examination should be pursued do not amount to bad faith. And neither does the Government's insistence that a taxpayer provide a clear and thorough explanation of his entitlement to deductions with respect to which he bears the burden of proof, especially ones that are subject to strict substantiation.

[*35] proceedings." Pac. Fisheries Inc., 484 F.3d at 1108. For purposes of awarding litigation costs, therefore, we consider the Commissioner's actions after the petition is filed and do not base our decision on the activity at the administrative level, even if that activity gave rise to the litigation. See id. at 1110-1111 (holding that the Government's litigating position was reasonable despite arguably unreasonable prelitigation conduct that "forced the taxpayers into litigation"); Friends of Benedictines in Holy Land, Inc. v. Commissioner, 150 T.C. 107, 117-118 (2018) (concluding that the Government's litigating position was reasonable based on post-petition actions despite inaction during the administrative phase). To do otherwise would contravene the statutory framework that Congress established.

As described above, the Court is convinced that sufficient doubt remained with respect to Mr. Jacobs' deductions to justify the Commissioner's position at the time of his answer. Mr. Jacobs has acknowledged as much, stating at the hearing that a reasonable person could have questioned how his expenses related to different aspects of his attorney-author-scholar business as opposed to his ongoing employment as an academic. In Mr. Jacobs' view, however, the Commissioner's counsel lost the opportunity to ask those questions based on the Government's failure to explore them sufficiently at the administrative level. But Mr. Jacobs'

**[\*36]** view is unsupported by the controlling law.[16]  Indeed, if the Court were to take up the position that Mr. Jacobs advocates, the Ninth Circuit would consider our action to be an abuse of our discretion.  See Kenney, 458 F.3d at 1032-1033 (concluding that the lower court "abused its discretion" by considering actions at the administrative level as part of its evaluation of the Commissioner's litigating position).[17]

---

[16]During the hearing on February 17, 2021, Mr. Jacobs invited the Court to consider the Ninth Circuit decision in Ibrahim v. DHS, 912 F.3d 1147 (9th Cir. 2019) (en banc).  That case was decided under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. sec. 2412 (2018), not under section 7430.  The facts in that case, involving as they did a person who was erroneously placed on the "No Fly" list, handcuffed at an airport while recovering from surgery, and barred from returning to the United States for more than 10 years, are far different from those in this case.  See Ibrahim, 912 F.3d at 1154.  More importantly, however, and as the Ninth Circuit has recognized, the text of the EAJA differs materially from the text of section 7430 as it pertains to the core issue here.  Pac. Fisheries Inc. v. United States, 484 F.3d 1103, 1110 (9th Cir. 2007) ("[I]t is evident from the statutory language that Congress intended the fee-shifting inquiry under the tax statute [section 7430] to be different from the fee-shifting inquiry under the EAJA. The tax statute includes no gap filler for including prelitigation agency action as part of the government's position in litigation.").

[17]In support of his position, Mr. Jacobs cites an opinion from the U.S. Court of Appeals for the Fifth Circuit.  See Lennox v. Commissioner, 998 F.2d 244 (5th Cir. 1993), rev'g in part and remanding T.C. Memo. 1992-382.  In light of Pacific Fisheries, Kenney, and the other authorities cited above, Mr. Jacobs' reliance on Lennox is misplaced.  See Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  Moreover, the facts of Lennox are distinguishable from the facts here because the taxpayer in Lennox sought to recoup both administrative

[*37] After Mr. Jacobs filed his petition, the Commissioner filed an answer and promptly returned the case to IRS Appeals to allow Mr. Jacobs to defend his deductions in person. As soon as IRS Appeals returned the case, the Commissioner conceded it without delay. Evaluated on this basis, the Commissioner's litigating position was "substantially justified" regardless of any missteps during the examination.

IV.    Conclusion

In sum, after a close review of a lengthy record, we find that the Commissioner's litigating position concerning the disallowance of Mr. Jacobs' expenses in the years in question was "substantially justified." Mr. Jacobs

_____

and litigation costs. See Lennox v. Commissioner, 998 F.2d at 246; see also Han v. Commissioner, T.C. Memo. 1993-386. In another case Mr. Jacobs cites from the U.S. Court of Appeals for the Third Circuit, the principal basis for the decision seems to be that the Commissioner overlooked an applicable provision of New Jersey law. See Nicholson v. Commissioner, 60 F.3d 1020 (3d Cir. 1995), rev'g T.C. Memo. 1994-280. Moreover, the Commissioner in that case does not appear to have focused the court's attention on the bifurcated analysis of administrative proceedings and litigation, a principle firmly established under Ninth Circuit precedent. See Huffman v. Commissioner, 978 F.2d 139, 146 (9th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-144.

[*38] therefore is not the prevailing party within the meaning of section

7430(c)(4)(A), and for that reason we will deny his motion.[18]

To reflect the foregoing,

An appropriate order and decision

will be entered.

---

[18]Because the requirements of section 7430 are conjunctive, we need not address the Commissioner's contention that Mr. Jacobs' claimed litigation costs are unreasonable in amount.